IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| BRITTNEY COLEMAN, Individually and as Natural Parent of J.D., a minor; and GERALD DAVIS, Individually and as Natural Parent of J.D., a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA;<br><br>Defendants. | CASE NO: 1:14-CV-168(WLS) |

## COMPLAINT

Plaintiffs, Brittney Coleman and Gerald Davis, individually and as the natural parents of J.D., a minor, file this, their Complaint, against Defendant United States of America showing this Honorable Court the following:

### PARTIES, JURISDICTION AND VENUE

1.

Plaintiffs Brittney Coleman and Gerald Davis are residents of Dougherty County, Georgia and are subject to the jurisdiction of this Court.

2.

This complaint arises from medical negligence which occurred in Albany, Georgia. Causes of action arise from tortious conduct committed by government employees who were acting within the scope of their employment pursuant to 28 U.S.C. §§ 1346(b), 2401(b), 2671-2680, the Federal Tort Claim Act and violations of the Georgia medical malpractice laws.

1

3.

Defendant United States of America operates and/or funds Albany Area Primary Health Care, Inc., d/b/a Mirian Worthy Women's Health Center, ("AAPHC") which is principally located at 204 North Westover Boulevard, Albany, Dougherty County, Georgia, under the Federally Supported Health Centers Assistance Act of 1992 and 1995 ("FSHCA").

4.

Defendant United States of America is the employer of all employees of AAPHC under 28 U.S.C. § 1356(b)(1).

5.

Defendant AAPHC's Mirian Worthy Women's Health Center is located at 401 South Madison Street, Albany, Dougherty County, Georgia.

6.

At all times material, Ese Efemini, M.D. ("Efemini") was a Georgia licensed physician whose specialty is obstetrics and gynecology and was an employee of AAPHC and Defendant United States of America.

7.

At times material, Dr. Efemini was acting within the scope of his employment with Defendant United States of America.

8.

At all times material, Elois Lewis Edge, CNM ("Edge") was a midwife licensed to practice in the State of Georgia and was an employee of AAPHC and Defendant United States of America..

9.

At times material, Ms. Edge was acting within the scope of her employment with Defendant United States of America..

10.

At all times material, Da'na Langford, CNM ("Langford") was a midwife licensed to practice in the State of Georgia and was an employee of AAPHC and Defendant United States of America.

11.

At times material, Ms. Langford was acting within the scope of her employment with Defendant United States of America.

12.

Jurisdiction of Plaintiffs' claims for medical malpractice lies in the Middle District of Georgia, Albany Division, under 28 U.S.C. § 1356(b)(1), the FSHCA and the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 ("FTCA").

13.

On October 7, 2013, Plaintiffs filed an administrative claim with the United States Department of Health & Human Services.

14.

On October 10, 2013, the United States Department of Health & Human Services signed for, and received, the administrative claim, via certified mail.

15.

As of the date of this Complaint, the Department of Health & Human Services has not communicated a final determination of the claim to Plaintiffs.

# **FACTS**

16.

At all times material, AAPHC held itself out as being a facility that was able to provide specialized and comprehensive obstetrical and gynecological services, including medical, nursing, diagnostic testing and other medical services necessary to evaluate, diagnose and treat patients such as Brittney Coleman and J.D.

17.

AAPHC provided obstetrical and gynecological services to Ms. Coleman prior to, and during, the birth of J.D.

18.

Dr. Efemini provided obstetrical and gynecological services to Ms. Coleman prior to, and during, the birth of J.D.

19.

Ms. Edge provided obstetrical and gynecological services to Ms. Coleman prior to, and during, the birth of J.D.

20.

Ms. Langford provided obstetrical and gynecological services to Ms. Coleman prior to, and during, the birth of J.D.

21.

Prior to the birth of J.D., Ms. Coleman had experienced two prior vaginal deliveries that resulted in a shoulder dystocia. The two prior shoulder dystocia[1] events occurred during the

---

[1] Shoulder dystocia occurs when, after delivery of the fetal head, the baby's shoulder gets stuck behind the mother's pubic bone. Shoulder dystocia is a known health risk to the mother and child during vaginal delivery. Injury occurs when the nerves in the baby's shoulder get stretched, compressed, or torn if the doctor pulls too hard on the baby's head, because the baby's shoulder is stuck behind the mother's Pubis Symphysis bone.

births of her two older daughters: 1) T.D., DOB: ▉▉▉▉▉▉▉▉, 2007, weight 7 lbs., 2.4 ozs.; and 2) K.D., DOB: ▉▉▉▉▉▉, 2009, weight 7 lbs., 10 ozs.

22.

Since the pelvic anatomy of a woman does not change between pregnancies, a previous shoulder dystocia is one of the most accurate predictors for recurrent shoulder dystocia in future vaginal deliveries.

23.

The risk of a woman having a repeat shoulder dystocia once having had one is twenty times greater risk than the baseline risk for a shoulder dystocia.

24.

The birth of T.D. and K.D. were attended by the health care employees of Defendant United States of America at AAPHC, d/b/a Mirian Worthy Women's Health Center.

25.

The birth of T.D. and K.D. were attended by the same midwife, Elois Lewis Edge, CNM.

26.

At all times material to the prenatal care, labor and delivery of J.D., Dr. Efemini, Ms. Edge and Ms. Langford were employees of Defendant United States of America who provided medical care to Brittney Coleman and J.D. at the Mirian Worthy Women's Health Center in Albany, Georgia.

27.

On or about September 20, 2011, Brittney Coleman began her prenatal care with AAPHC, approximately ten (10) weeks into her pregnancy with J.D.

28.

Throughout the prenatal care, labor, delivery and post-delivery care of Brittney Coleman and J.D., Defendant United States of America, through its employees and agents at AAPHC, had a duty to provide adequate, sufficient and non-negligent medical, diagnostic and other health-related care to Brittney Coleman and J.D.

29.

On September 20, 2011, Defendant United States of America, through its agents and employees at AAPHC, undertook and agreed to provide such care to Brittney Coleman and agreed to manage the prenatal, labor, delivery and post-delivery care of J.D.

30.

Brittney Coleman's prior health history caused her to be at high risk for a dystocia injury occurring during the birth of J.D.

31.

During her prenatal care, Brittney Coleman was examined and/or seen by employees and/or agents of Defendant United States on 9/23/2011, 10/5/2011, 10/18/2011, 11/17/2011, 12/2/2011, 12/16/2011, 1/20/2012, 1/24/2012, 2/3/2012, 2/10/2012, 2/23/2012, 3/13/2012, 3/20/2012, 3/27/2012, 4/4/2012, 4/11/2012 and 4/18/2012.

32.

At all times material, Defendant United States of America, through its agents and/or employees, in particular Dr. Efemini, Ms. Edge and Ms. Langford, never warned or counseled Brittney Coleman concerning her increased risk for a dystocia injury, or the option of delivery by Cesarean section.

33.

On April 20, 2012, Brittney Coleman presented to Phoebe Putney Memorial Hospital for

induction of labor.  At that time, J.D.'s assessed gestational age was 40 5/7 weeks, with "size greater than dates" at 42 cm.

34.

Brittney Coleman underwent Cervidil and Pitocin induction.  Rupture of the membranes occurred at 5:38 a.m. on April 20, 2012. Pitocin was ordered to commence at 5:55 a.m.

35.

Pitocin is a drug used to induce labor and increase the force, frequency, and duration of uterine contractions.

36.

Despite Defendant's knowledge of Brttney Coleman's high risk of shoulder dystocia, Defendant's employees administered Pitocin to induce vaginal delivery.

37.

On April 20, 2012, Brittney Coleman progressed in labor, and due to a non-reassuring fetal heart rate, a decision was made to perform vacuum assisted vaginal delivery.

38.

During the vaginal delivery process, a shoulder dystocia was encountered, which Dr. Efemini attempted to resolve by the McRoberts position and supra-pubic pressure.

39.

Following delivery, J.D. could not move her left arm.

40.

Despite physical therapy there has been no meaningful improvement in the use of her arm.

41.

Subsequent MRI findings showed a traction injury to the C6-T1 nerve roots with a complete avulsion (tearing rupture) of the C8 nerve root.

42.

J.D. has required brachial plexus neuroplasty with nerve transfers and grafts.

43.

The injuries sustained by J.D. are permanent and irreversible.

44.

Plaintiffs have incurred, and will continue to incur, medical expenses as a result of the injury J.D. suffered during her birth.  J.D. will incur medical expenses during her adult years as a result of the injury she suffered during her birth.  J.D. has and will continue to experience pain and suffering throughout her life as a result of this injury.  J.D. is not only permanently disabled, but also permanently disfigured as her arm is limp and hangs at her side due to Defendants' conduct.

## **COUNT I – PROFESSIONAL NEGLIGENCE**

45.

Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 through 44, as if more fully stated herein.

46.

At all times material, Defendant United States of America's agents and/or employees held themselves out as having that degree of professional skill appropriate for the provision of health care services to patients such as Brittney Coleman and J.D.

47.

Throughout the prenatal care, labor, delivery and post-delivery care of Brittney Coleman and J.D., Defendant United States of America, through its employees and agents at AAPHC, had a duty to provide adequate, sufficient and non-negligent medical, diagnostic and other health-related care to Brittney Coleman and J.D.

48.

Defendant United States of America, through it agents and/or employees, had a duty to provide adequate, sufficient and non-negligent medical, diagnostic and other health-related care to patients Brittney Coleman and J.D. within the applicable standards of care.

49.

Defendant United States of America, through its agents and/or employees, undertook and agreed to provide prenatal, labor, delivery and post-delivery care to Brittney Coleman and J.D.

50.

In providing such services, Defendant United States of America, through its agent and/or employee physicians, including Dr. Efemini, deviated from the standards of care in its care and treatment of Brittney Coleman and J.D. in the following ways:

a. Failure to obtain and evaluate the relevant history of Ms. Coleman's prior history of shoulder dystocia during her previous vaginal deliveries;

b. Failure to assess Ms. Coleman as being at an elevated risk for a shoulder dystocia injury during vaginal delivery.

c. Failure to recommend Cesarean section delivery to Ms. Coleman; and

d. Use of excessive force and traction in the delivery of Jeralahresse Davis.

51.

In providing such services, Defendant United States of America, through its agent and/or employee nurse midwives, including Ms. Edge and Ms. Langford, deviated from the standards of care in its care and treatment of Brittney Coleman and J.D. in the following ways:

a. Failure to accurately obtain the relevant obstetrical history, including Brittney Coleman's prior history of two deliveries complicated by shoulder dystocia;

b. Failure to identify Brittney Coleman as having a significantly elevated risk for shoulder dystocia;

c. Failure to appropriately consult with a physician on Brittney Coleman's obstetrical history;

d. Failure to appropriately counsel Brittney Coleman on the risks associated with vaginal delivery;

e. Failure to appropriately refer Brittney Coleman for medical management and cesarean delivery; and

f. Failure to appropriately communicate Brittney Coleman's relevant obstetric history to her consulting physician prior to allowing vacuum assistance.

52.

As a direct and proximate result of Defendant United States of America's agents and/or employees negligence, J.D. suffered severe and permanent disabling injuries. Plaintiffs are entitled to all special damages and other damages caused by Defendant United States of America's negligence, including but not limited to medical expenses, both past and future; rehabilitative expenses, both past and future; loss of earning capacity; prolonged hospitalizations and the need for ongoing medical, nursing, hospital, pharmaceutical, rehabilitative and custodial care; and physical pain and emotional suffering, both past and future, in an amount that would constitute full and adequate compensation as determined by the enlightened conscious of the jury.

53.

Plaintiffs Brittney Coleman and J.D. sustained a direct physical impact and physical injuries because of the deviations from the prevailing standards of care described above.

54.

Plaintiff Brittney Coleman sustained emotional distress from witnessing J.D.'s suffering and resulting permanent injuries.

55.

Plaintiff Brittney Coleman, as the mother of J.D., is entitled to recover all damages allowed by Georgia law (including damages for her physical injuries, pain and suffering, and serious emotional distress) for witnessing J.D.'s suffering and permanent injuries, which were caused by the negligent and substandard care provided by Defendant United States of America.

56.

Although an O.C.G.A. § 9-11-9.1 affidavit is not required in federal court, attached to this Complaint are the affidavits of experts competent to testify setting forth "at least one negligent act or omission claimed to exist and the factual basis for each such claim" against Defendant United States of America's agents and/or employees, Dr. Efemini, Ms. Edge and Ms. Langford.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand and pray as follows:

A.   That process issue and that Defendants be served in accordance with law;

B.   That Plaintiffs obtain judgment in an amount deemed to be just and proper for all damages allowable under Georgia law;

C.   That Plaintiffs recover the costs of this action; and

E.      That Plaintiffs receive such other and further relief as this Court deems fair, just, and equitable.

This 3rd of November 2014.

**SPOHRER & DODD, P.L.**

s/Jay M. Howanitz
Jay M. Howanitz
Attorney for Plaintiff
State Bar #119758
701 West Adams Street, Suite 2
Jacksonville, Florida 32204
Telephone:      (904) 309-6500
Facsimile:       (904) 309-6501
Email:              jhowanitz@sdlitigation.com